IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HUMBERTO E. AGUILAR,                    §
                                        §
          Plaintiff,                    §
                                        §
V.                                      §          No. 3:25-cv-947-B-BN
                                        §
CITY OF CARROLLTON, ET AL.,             §
                                        §
          Defendants.                   §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Based on his encounter with police officers and subsequent arrest on June 7, 2022, Plaintiff Humberto E. Aguilar filed this *pro se* action under 42 U.S.C. § 1983 against the City of Carrollton and three Carrollton police officers on April 16, 2025. *See* Dkt. No. 3.

Senior United States District Judge Jane J. Boyle referred Aguilar's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 14.

The City and the officers then moved to dismiss Aguilar's complaint. *See* Dkt. Nos. 28-30, 33-36, & 43-44. Among making other filings, Aguilar responded to the motions. *See* Dkt. Nos. 47 & 48. And the defendants filed a reply. *See* Dkt. No. 50.

For the reasons and to extent set out below, the Court should grant the motions and dismiss this lawsuit.

**Legal Standards**

First, while the motions to dismiss cite Federal Rule of Civil Procedure 12(b)(1)

and reference the Court's subject-matter jurisdiction, there are no credible grounds to dismiss this case under Rule 12(b)(1) where Aguilar filed his lawsuit under a federal statute based on allegations – which, while not plausibly pleaded, are neither frivolous nor insubstantial – that the defendants violated the Fourth and Fourteenth Amendments to the United States Constitution. *See* 28 U.S.C. § 1331; *Copeland v. E\*Trade Cap. Mgmt., L.L.C.*, No. 24-10658, 2025 WL 66732, at \*2 (5th Cir. Jan. 10, 2025) (per curiam) (Under Section 1331, "when a federal claim appears on the face of the complaint, dismissal for lack of subject matter jurisdiction is only proper in the case of a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior [United States] Supreme Court decision." (cleaned up)).

So the Court should consider the motions as brought only under Federal Rule of Civil Procedure 12(b)(6).

A motion under Rule 12(b)(6) is "not meant to resolve disputed facts or test the merits of a lawsuit" but "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Considering such a motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

But a plaintiff still must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a

right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And a court's "obligation [is] to accept [the] complaint's factual allegations as true and assess whether those facts permit a reasonable inference that [a defendant] is liable." *Sewell*, 974 F.3d at 581; *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that plaintiffs allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Summed up, "to survive" dismissal under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court

'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen an allegation is contradicted by the contents of an exhibit attached to the pleading," "the exhibit and not the allegation controls." *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (cleaned up; quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to

- 5 -

establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And, under these standards, the Court may consider video footage presented through a motion to dismiss only in certain circumstances.

## Analysis

Against a Texas municipality and its police officers (in their individual capacities), Aguilar asserts multiple violations of the Fourth Amendment based on his arrest and resultant detention and prosecution. In sum, he alleges that he was unlawfully seized and arrested, denied medical care and subjected to deliberate indifference by the arresting officers, and then maliciously prosecuted. *See* Dkt. No. 3 at 10-11. And he alleges that not only are the officers individually responsible but so is their employer, the City of Carrollton. *See id.* at 13-16.

### I.    The Court may consider the body camera footage attached to the motions to dismiss as part of the pleadings.

Moving to dismiss Aguilar's complaint, the defendants attach to their motions and rely on body camera footage from Aguilar's arrest. So, as an initial matter, the Court must determine whether it may consider that footage when ruling on a motion to dismiss based on the pleadings alone.

It's a two-step analysis. To be considered part of the pleadings, video footage must (1) be "referred to in [Aguilar's] complaint" and (2) be "central to [Aguilar's] claim." *Collins*, 224 F.3d at 499.

Taking the second step first, "[b]ody or dash cam footage – providing a contemporaneous account that either confirms or negates what the state actors allegedly did – may be considered more than mere evidence of a Fourth Amendment violation, as such footage is more like a contract's terms and thus is 'central to the plaintiff's claim.'" *Martinez v. Dall. Police Dep't*, No. 3:22-cv-1870-K-BN, 2025 WL 2347186, at *3 (N.D. Tex. July 23, 2025) (quoting *Kaye*, 453 B.R. at 662; citing *Benfer v. City of Baytown, Tex.*, 120 F.4th 1272, 1278 n.2 (5th Cir. 2024) ("Because the expert report, which is incorporated into Benfer's complaint, refers to Calvert's dash cam and bodycam footage, we may consider the footage at this stage.")), *rec. accepted*, 2025 WL 2345075 (N.D. Tex. Aug. 13, 2025).

And Aguilar references body camera footage multiple times in the complaint, including by explaining that "[b]ody camera footage shows" how officers characterized their call to the house "early in the encounter" and by urging the Court to expedite its consideration of this case because "[t]he City of Carrollton is already in possession of the relevant video evidence." Dkt. No. 3 at 5 & 18.

And, so, Aguilar has made the body camera footage "part of the pleadings." *Collins*, 224 F.3d at 498-99; *cf. Hodge v. Engleman*, 90 F.4th 840, 844-45 (5th Cir. 2024) ("Although the court may rely on documents that the pleadings incorporate by reference, Hodge did not attach the video evidence to the pleadings, nor did the

pleadings refer to the videos sufficiently to incorporate them. Therefore, by reviewing the 'appended video evidence,' the district court moved beyond the pleadings and to the summary judgment stage." (citations omitted)).

And, "where video recordings are included in the pleadings … the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); footnote omitted); *see also Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 298 (5th Cir. 2023) (per curiam) ("If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, 'the exhibit and not the allegation controls.' Here, the Video was attached to Montgomery County and Montes's joint motion to dismiss and referenced by Sligh in her operative complaint. Accordingly, to the extent that the Video contradicts Sligh's allegations, the Video controls." (quoting *Riley*, 355 F.3d at 377)).

## II.  The Court should dismiss the unlawful seizure and arrest claim as time barred.

Defendants move to dismiss Aguilar's first claim, that his seizure and arrest on June 7, 2022 violated the Fourth Amendment because they argue it's time barred.

"A complaint is 'subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling.'" *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (en banc) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007))); *accord Doe 1 v. City View Indep. Sch. Dist.*,

150 F.4th 668, 674 (5th Cir. 2025) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." (citations omitted)).

Section 1983 provides a cause of action for "a violation of the Constitution or of federal law … committed by someone acting under color of state law." *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"'The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state.' In Texas, a two-year statute of limitations governs personal injury claims." *Jenkins*, 151 F.4th at 747 (quoting *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018), then citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(b)))

And, while federal courts borrow Texas's limitations statute, they "determine the accrual date of a § 1983 action by reference to federal law." *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

"[A]ccrual occurs when a plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Frame*, 657 F.3d at 238 (quoting *Wallace*, 549 U.S. at 388; citing *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

Put another way, the clock "starts running … 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know

that he has been injured.'" *Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023) (quoting *Edmonds v. Oktibbeha Cnty.*, 675 F.3d 911, 916 (5th Cir. 2012) (quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987))).

That is because, for accrual, "the proper focus is on the time of the [allegedly wrongful] act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) (cleaned up).

So this claim accrued the day that Aguilar was detained and arrested – June 7, 2022.

And that the criminal prosecution related to this arrest did not end until December 2024 did not delay its accrual date.

Because on June 7, 2022 – and without judging its merits – Aguilar had a complete and present cause of action for wrongful detention. And this would have been true had he not been prosecuted. And, so, he did not need to wait for a favorable outcome in his criminal case to bring the wrongful detention claim. *See Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2020 WL 5542333, at *2 (N.D. Tex. Sept. 15, 2020) ("[F]alse arrest [is] a Fourth Amendment claim that may be made (and is commonly made) prior to the conclusion of criminal proceedings." (citing *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 392 (5th Cir. 2020) ("In *Wallace*, the Supreme Court rejected the argument that, because of *Heck[ v. Humphrey*," 512 U.S. 477 (1994)], accrual [of a Section 1983 claim for false arrest] could not occur until there was a favorable termination of criminal charges, reasoning that 'the impracticality of' a 'rule' that 'an action which would impugn an anticipated future

- 10 -

conviction cannot be brought until that conviction occurs and is set aside ... should be obvious.'" (cleaned up)))), *modified*, 2021 WL 3828151 (N.D. Tex. Aug. 27, 2021), *aff'd*, 2023 WL 117826 (5th Cir. Jan. 5, 2023).

And Aguilar has not plausibly pleaded a basis to toll the statute of limitations. Nor does Aguilar's response provide a reason to do so. *See, e.g.*, Dkt. No. 47 at 26 (arguing that the claim did not accrue until his prosecution was dismissed and asserting (implausibly) that "the extent of [his] injuries" "could not be fully discovered until" [he] obtained body camera footage and exhausted efforts to resolve the matter pre-suit"). The Court should therefore dismiss the Fourth Amendment wrongful detention claim with prejudice as time barred.

## III.    The Court should dismiss the malicious prosecution claim as not plausibly pleaded.

Insofar as Aguilar also asserts Fourth Amendment violations analogous to the common law tort of malicious prosecution, *see Winfrey*, 901 F.3d at 492-93; *Fusilier v. Zaunbrecher*, 806 F. App'x 280, 282-83 (5th Cir. 2020) (per curiam), the undersigned observes that that claim accrued "only once the underlying criminal proceedings [were] resolved in [Aguilar's] favor," *McDonough v. Smith*, 588 U.S. 109, 116 (2019) (citations omitted).

"To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022).

As alleged, the prosecution against Aguilar "was ultimately dismissed on

December 17, 2024." Dkt. No. 3 at 8.

So this alleged Fourth Amendment violation is timely filed.

"A plaintiff may bring a Fourth Amendment claim under § 1983 for malicious prosecution, even in the absence of 'some affirmative indication of innocence,'" because "'the gravamen of the Fourth Amendment claim for malicious prosecution is the wrongful initiation of charges without probable cause.'" *Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814, at *3 (5th Cir. Nov. 27, 2023) (per curiam) (cleaned up; quoting *Thompson*, 596 U.S. at 49, 43).

And, following "*Thompson*'s clear recognition of the constitutional tort of malicious prosecution," the Fifth Circuit "reinstated" "the rule iterated in *Gordy[ v. Burns*, 294 F.3d 722 (5th Cir. 2002),]" establishing the elements that "parties asserting a Fourth Amendment malicious prosecution claim under § 1983 must prove": "'(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.'" *Armstrong*, 60 F.4th at 279 (quoting *Gordy*, 294 F.3d at 727).

A plaintiff "must sufficiently allege each of these elements in order to bring a claim for malicious prosecution." *Wallace v. Taylor*, No. 22-20342, 2023 WL 2964418, at *6 (5th Cir. Apr. 14, 2023).

But first, "because an unlawful seizure is the threshold element, if the prosecution is supported by probable cause on at least one charge, then a malicious

prosecution claim cannot move forward." *Armstrong*, 60 F.4th at 279 n.15 (citing *Thompson*, 596 U.S. at 43 n.2); *accord Sessanga v. City of DeSoto Police Dep't*, No. 3:24-cv-950-G-BN, 2024 WL 4682750, at *2 (N.D. Tex. Oct. 23, 2024) ("And, so, [a plaintiff's] argument that police officers violated his right to be free from malicious prosecution 'requires [the officers] to have acted in the absence of probable cause.'" (quoting *Matthews v. Green*, No. 23-10178, 2024 WL 448352, at *3 (5th Cir. Feb. 6, 2024) (per curiam))), *rec. accepted*, 2024 WL 4683661 (N.D. Tex. Nov. 4, 2024), *aff'd*, 2025 WL 2848715 (5th Cir. Oct. 8, 2025).

Add to this that "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest [and malicious prosecution], insulating the initiating party." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)); *see, e.g.*, *Bledsoe*, 2023 WL 8184814, at *4 (applying doctrine to malicious prosecution); *Sessanga*, 2025 WL 2848715, at *2 (same).

And the facts supporting Aguilar's arrest were presented to a magistrate, who then issued an arrest warrant after finding probable cause. *See* Dkt. No. 29-1, Exs. 4 & 5; *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (per curiam) (under Federal Rule of Evidence 201, a district court may "take judicial notice of the state court's orders, final judgment, and docket as matters of public record attached to the motion to dismiss" (citations omitted)).

But there is also a recognized exception to the independent-intermediary

doctrine: it "does not apply if the plaintiff shows that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Sessanga*, 2025 WL 2848715, at *2 (cleaned up).

And the Fifth Circuit "has squarely addressed a plaintiff's burden at the pleading stage with respect to the taint exception. At the pleading stage, 'mere allegations of taint ... may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference.'" *Wilson v. Stroman*, 33 F.4th 202, 212 (5th Cir. 2022) (quoting *McLin*, 866 F.3d at 690).

Aguilar's complaint lacks both allegations of taint and – more importantly – facts that could support that inference. He instead mentions this exception for the first time in response to the motions to dismiss, filings that are not themselves pleadings. And, so, Aguilar has not carried his "burden at the pleading stage with respect to the taint exception."

Regardless, the officers need not rely on the independent-intermediary doctrine to demonstrate that Aguilar has not plausibly pleaded a malicious prosecution claim. That is because the videos made part of the pleadings by Aguilar demonstrate that there was not an absence of probable cause to arrest him for DWI.

"Probable cause is established by the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Matthews*, 2024 WL 448352, at *3 (quoting *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000)).

"The probable cause analysis does not demand any showing that the belief that an offense was committed be correct or more likely true than false. Rather, it requires [a court] to find a basis for an officer to believe to a fair probability that a violation occurred." *Id.* (cleaned up); *accord Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997) ("Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence.")).

Based on an independent review of the video footage, the undersigned agrees with the description of that evidence presented in Defendants' reply:

> [T]hirty-four seconds into the encounter, Officer Norris told Plaintiff that he noticed the smell of alcohol on Plaintiff. Less than four minutes later in the video, while Officer Norris was questioning Plaintiff about his family situation to determine whether he had been served with the protective order, Officer Norris also asked Plaintiff about his drinking. These events occurred before the other back up officers arrive on the scene. In fact, during this line of questioning Plaintiff admitted that he could smell the alcohol on himself.
>
> Additionally, Plaintiff admitted to the officers that he drove his vehicle to the location where he was now being questioned, that Plaintiff arrived approximately fifteen minutes earlier, that Plaintiff did not drink any alcohol from the moment he arrived at the location until the moment the officers first encountered him, that he drank the night before, and that he was hungover at the time he was talking with the officers. After seeing two Miller Lite cans in the front seat cup holders of Plaintiff's vehicle, determining that he failed the standard field sobriety tests, and listening to all of Plaintiff's admissions, the officers determined that probable cause existed to arrest Plaintiff for driving while intoxicated.
>
> Additionally, at 11:16:15 a.m. on the video, which was prior to the conclusion of the investigation into the possible violation of the protective order, Officer Motley states: "We may have an intox investigation over here" to which Officer Norris responds, "He drove here." At 11:16:42 a.m. on the video, Officer Norris states on a phone call: "At the least, we're gonna, I think, have an intox investigation if he needs to be taken somewhere." The comments about driving and the

"intox" investigation clearly show that the officers had begun the DWI investigation prior to the completion of the investigation regarding the possible violation of the protective order. The officers were not, as Plaintiff alleges, "determined to justify detention and arrest once it became clear that no served protective order existed."

Dkt. No. 50 at 4-5 (footnotes omitted).

## IV.    The Court should dismiss the deliberate indifference claim as not plausibly pleaded.

Aguilar alleges, in sum, that the officers' "collective failure to obtain medical care despite clear signs of medical need, prior knowledge of Plaintiff's vulnerable condition, and their own acknowledgment of distress constitutes deliberate indifference under clearly established Fourteenth Amendment law." Dkt. No. 3 at 11; *see id.* at 10-11 (alleging that he "was visibly trembling, reported extreme nervousness, appeared disoriented, and was observed by officers to be shaking so severely he could 'barely stand'"; that an officer "explicitly suggested on camera that medics might need to be called due to Plaintiff's condition, yet no medical assistance was summoned"; that an officer ignored Aguilar's "delusional episode during a hospital blood draw"; that "[u]pon arrival at the jail, he lost consciousness and collapsed briefly during intake, requiring Officer Hester to hold him up physically. Jail personnel were not notified, and no medical evaluation was performed"; and that "no attempt was made to retrieve or report [Aguilar's anxiety and high blood pressure] medication").

Following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), "this circuit has continued to apply a subjective deliberate indifference standard in non-excessive-force actions alleging a violation of a pretrial detainee's constitutional rights based

on episodic acts or omissions," *Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at \*5 n.7 (5th Cir. June 26, 2024) (per curiam) (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (per curiam)).

"'Deliberate indifference is an extremely high standard to meet' but can be satisfied by a 'wanton disregard for [an arrestee's] serious medical needs.'" *Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Put another way, "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (cleaned up).

And, so, allegations that a state actor's actions were merely ineffectual "do not demonstrate deliberate indifference." *S.R. ex rel. Musgrove v. Scott Cnty., Miss.*, No. 22-60124, 2023 WL 2964413, at \*4 (5th Cir. Apr. 14, 2023) (per curiam) (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997); citing *Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) ("While these measures may have been inadequate, Plaintiffs do not present any evidence that the Officers knew they were insufficient and intentionally failed to do more out of indifference to Aguirre's well-being.")).

Here, Aguilar fails to provide factual content from which the Court may infer that the officers' treatment of him exhibited the requisite degree of wantonness or recklessness to demonstrate deliberate indifference. *Cf. id.* (noting that, "[a]t the very

least, [a 45 minute] delay certainly wasn't 'wanton' or 'reckless'" (citations omitted)).

## V.    The individual defendants are entitled to qualified immunity.

The individual officers also move for dismissal on their assertions of qualified immunity.

"Where public officials assert qualified immunity in a motion to dismiss, [district courts] must rule on the motion." *Carswell v. Camp*, 54 F.4th 307, 310, 311 (5th Cir. 2022).

And, where the defense applies and is raised in good faith, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

And, because the "qualified-immunity inquiry is two-pronged," *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)), to survive a motion to dismiss asserting qualified immunity, a plaintiff's pleadings must yield a "yes" to two questions:

- Do "the facts, viewed in the light most favorable to the party asserting the injury, [plausibly allege] that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600).

- Was "the right at issue … 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson*, 555 U.S. at 232).

As to the first question, because a plaintiff "need not anticipate a qualified immunity defense," *Fisher v. Dall. Cnty.*, 299 F.R.D. 527, 532 (N.D. Tex. 2014), the Rule 12(b)(6) standards are "not heightened … [w]hen a plaintiff pleads a § 1983 claim that implicates qualified immunity," *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)).

- 18 -

Instead, a plaintiff need only "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Allen*, 65 F.4th at 744 (quoting *Arnold*, 979 F.3d at 267).

That is, "a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal.*" *Arnold*, 979 F.3d at 267; *accord Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023) ("A plaintiff attempting to overcome qualified immunity at the Rule 12(b)(6) stage must plead facts that allow this court to reasonably infer that the defendant is liable for the harm alleged." (citing *Arnold*, 979 F.3d at 267)).

For the reasons explained above, Aguilar offers no well pleaded factual allegations that allow the Court to reasonably infer that any officer is liable for the constitutional violations claims that he has alleged.

And, so, Aguilar has not carried his burden to demonstrate that the officers are not entitled to qualified immunity as to the Section 1983 claims asserted against them. Qualified immunity is therefore another basis to dismiss the claims against the individual defendants.

## VI.  The Court should dismiss the claims against the City as not plausibly pleaded.

"Municipalities can be held liable for violating a person's constitutional rights under § 1983." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) ("*Sanchez II*") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

And the general pleading standards set out above apply to such a claim against

a municipality. *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

But, because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id.* (quoting Section 1983; citing *Monell*, 436 U.S. at 690), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez II*, 956 F.3d at 791 (citing *Monell*, 436 U.S. at 694); *see also Cope*, 2024 WL 3177781, at *3 ("A municipality may be held liable for a constitutional violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (quoting *Monell*, 436 U.S. at 694)).

> To plausibly allege that a policy was the moving force,
>
> a plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482.

These elements are "necessary to distinguish individual violations perpetrated

- 20 -

by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

And, where a plaintiff's claim fails as to one prong, a court "need not consider whether [the plaintiff's] claim also fails the other two *Monell* prongs." *Brown*, 985 F.3d at 494 & n.11 (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted).

And, in rare circumstances, "a single decision by a policymaker may … constitute a policy for which a municipality may be liable," where (1) the "decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Doe v. Englewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (cleaned up); *see also Johnson*, 83 F.4th at 946 ("[A]n official policy includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (cleaned up)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making

authority.'" *Allen*, 65 F.4th at 749 (citation omitted).

A plaintiff must then "allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (citation omitted).

As to the causation required, "[t]his connection must be more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (footnote omitted). That is because the "moving force" is the "catalyst" for the injury in question, not merely a "contributing factor." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695-96 (7th Cir. 2013) (per curiam).

"[T]he failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (citation omitted). And, although "a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted).

And, regardless the theory of municipal liability, "[t]o proceed beyond the

pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and footnote omitted).

That is because "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997))).

Foremost, Aguilar has not alleged a claim against the City because – for the reasons set out above – he has not plausibly pleaded "that a constitutional violation occurred." *Sanchez II*, 956 F.3d at 791.

But, even if he had, Aguilar's operative pleading still fails to plausibly allege a Section 1983 claim against the City because he fails to provide factual content that allows the Court to draw the reasonable inference that a municipal policy was the moving force behind the constitutional violations alleged.

First, Aguilar has not alleged that the actions taken against him were due to an official policy. And a municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to [its] policymaker." *Peña*, 879 F.3d at 623 (quoting *Hicks-Fields v. Harris Cnty., Tex.*, 860

- 23 -

F.3d 803, 808 (5th Cir. 2017)); *see also Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023) ("[P]laintiffs' theory hinges entirely on the idea that if enough individuals do something, it becomes the fault of the policymaker. [But, w]ithout a showing of knowledge and acquiescence, such a theory is no more than vicarious liability and cannot survive a motion to dismiss." (citation omitted)).

"To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo*, 2015 WL 5021393, at \*5 (quoting *Piotrowski*, 237 F.3d at 582). And a pattern requires "sufficiently numerous incidents," as opposed to "isolated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989) (cleaned up).

Which is why allegations "limited to the events surrounding the plaintiff" – the scope of the allegations pleaded by Aguilar – cannot constitute "an allegation of a *de facto* policy … by [a municipality]," *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *accord Hutcheson*, 994 F.3d at 482, as such allegations do "not plausibly allege *any* pattern of conduct – much less a pattern of similar violations," *Johnson*, 83 F.4th at 947 (emphasis in original).

> [Instead, a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. That knowledge, coupled with a failure to act, can show the existence of a municipal policy.

*Robinson*, 80 F.4th at 710 (cleaned up); *accord Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) ("While municipalities can be sued directly under § 1983,

*Monell* establishes that they cannot be found liable on a theory of vicarious liability or respondeat superior" – and, so, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." (cleaned up)).

Aguilar also attempts to allege that the City is liable under a ratification theory. *See, e.g.*, Dkt. No. 3 at 15 ("Despite receiving multiple certified letters and a formal rebuttal from Plaintiff that detailed serious constitutional violations and referenced video evidence, the City of Carrollton failed to initiate an internal investigation or discipline any officer involved. The City's silence in response to these credible allegations – coupled with its deferral to an insurer's legally flawed dismissal – constitutes ratification of the officers' unconstitutional conduct and the policies or customs that enabled it.").

"Concerning ratification, if 'authorized policymakers approve a subordinate's decision and the basis for it, their ratification [is] chargeable to the municipality because their decision is final.'" *Sligh*, 87 F.4th at 303 (quoting *World Wide Street Preachers Fellowship v. Twn. of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)).

But "[s]imply not repudiating [police conduct] does not mean that a policymaker ratifies it. If so, that would cross the line into impermissible respondeat superior liability for a municipality." *Dobbins v. City of Dall.*, No. 3:20-cv-1727-K, 2021 WL 3781927, at \*2 (N.D. Tex. Aug. 25, 2021); *see also Peterson*, 588 F.3d at 849 (even "defend[ing] conduct that is later shown to be unlawful does not necessarily

incur liability on behalf of the municipality").

Plus, "unless the subordinate's actions are sufficiently extreme – for instance, an obvious violation of clearly established law – a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *Sligh*, 87 F.4th at 303 (cleaned up).

And, so, "underlying conduct" that, "while unconstitutional, [may] not [be] sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)); *see also Montgomery v. Hollins*, No. 3:18-cv-1954-M-BN, 2019 WL 2424053, at *8 (N.D. Tex. May 8, 2019) ("[T]he Fifth Circuit has limited the theory of ratification to extreme factual situations, such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back." (cleaned up)), *rec. accepted*, 2019 WL 2422493 (N.D. Tex. June 10, 2019).

In sum, the operative complaint contains neither allegations of sufficiently extreme conduct nor allegations that an authorized policymaker approved of – and therefore ratified – the alleged conduct of the individual officers. Aguilar has therefore not plausibly alleged municipal liability under a ratification theory.

## VII.   The Court need not grant Aguilar leave to amend his claims.

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend,"

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

"Granting leave to amend, however, is not necessary when the plaintiff has pleaded his or her 'best case' after being apprised of pleading deficiencies. Likewise, a district court need not grant a motion to amend if doing so would be an exercise in futility." *Allen v. Navy Fed. Credit Union*, No. 3:24-cv-949-L-BN, 2025 WL 484818, at *13 (N.D. Tex. Feb. 13, 2025) (citations omitted).

Because the Court's review of the allegations includes video footage – footage that likely would be offered by the defendants again as critical evidence in support of summary judgment should Aguilar be allowed leave to replead and somehow survive a second round of motions to dismiss – the Court has fully considered Aguilar's allegations to the extent that it's likely he has stated his best case.

As such, the Court need not grant leave to amend and should dismiss Aguilar's claims with prejudice. But the opportunity to file objections to these findings, conclusions, and recommendation (as further explained below) allows Aguilar an opportunity to show that this case should not be dismissed with prejudice at this juncture and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

## Recommendation

The Court should grant Defendants' motions to dismiss [Dkt. Nos. 29 & 33] under Federal Rule of Civil Procedure 12(b)(6), and, unless Plaintiff Humberto E. Aguilar through timely objections to this recommendation shows a basis to amend to allege a plausible claim, the Court should dismiss this lawsuit with prejudice for failure to state a claim on which relief may be granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 3, 2026

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE